UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>SPARKLE RHIANNON MARTIN,<br><br>Debtor. | Case No. 23-16081 (JNP)<br><br>Chapter 7 |

## MEMORANDUM DECISION

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

Sparkle Martin, (the "Debtor"), has filed two motions. Dkt. Nos. 190, 191. The first motion (the "Sanctions Motion") is labeled as a complaint for damages for violation of the stay (the "Stay") imposed pursuant to section 362 of Title 11 of the United States Code (the "Bankruptcy Code"). Dkt. No. 190. The second motion (the "Motion to Reopen," and, together the with Sanctions Motion, the "Motions"), seeks to have this Court reopen and consider hearings held and concluded on February 3, 2026 (the "February Hearing"), and reconsider my rulings related to several motions which also sought sanctions for violations of the Stay and other orders of the Court. Dkt. No. 191. Also before the Court is an Order to Show Cause why the Debtor should not be sanctioned for repeated filings alleging the same core facts and seeking the same relief. Dkt. No. 192. For the following reasons, both Motions will be denied, and the Court will sanction the Debtor.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Standing Order of the United States District Court dated July 23, 1984, as amended September 18, 2012, and June 6, 2025, referring all bankruptcy cases to the bankruptcy court.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of these Motions constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## Background

The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on July 17, 2023, and voluntarily converted her case to Chapter 7 on January 16, 2024. Dkt. Nos. 1, 72. Woodspring Suites Cherry Hill ("Woodspring") and Grand Prix Fixed Lessee, LLC ("Grand Prix"), were granted relief from the Stay on September 5, 2023, and March 19, 2024, respectively. Dkt. Nos. 29, 94. The Trustee's report of no distribution and abandonment of remaining assets was issued on August 5, 2025, and the Debtor received her discharge on December 2, 2025.

Since conversion, the Debtor has filed multiple motions seeking sanctions against several parties for alleged violations of the Stay and other orders of this Court, including filing six different motions against Grand Prix, Dkt. Nos. 81, 97, 98, 107, 117, 154, and two motions against Nitin Corporation d/b/a Days Inn ("Days Inn"). Dkt. Nos. 147, 163. The Court has repeatedly denied these motions, most recently in its decision and corresponding orders issued on February 5, 2026 (the "February Decision"). The February Decision, along with all prior decisions and orders related to these issues are incorporated here by reference. Dkt. Nos. 94, 103, 104, 112, 128, 156, 180. Most recently (and related to the February Decision), the Court heard argument on four motions (the "February Motions") at the February Hearing. The first of those motions sought sanctions against several creditors including Credit One, Realty Holdings, PSJC, LLC., and Woodspring, for alleged violations of the Stay. Dkt. No. 153. The second and third motions sought sanctions against Grand Prix and Days Inn, respectively, for alleged violations of the Stay. See Dkt. Nos. 154, 163, 166. In the final motion the Debtor sought to redeem her vehicle (the "Motion to Redeem"). Dkt. No. 167. The February Hearing began at 11:46 a.m. and continued through 12:33 p.m. Feb. 3 HRG. Following the February Hearing this Court issued the February Decision - an oral decision denying

all of the February Motions, and additionally put the Debtor on notice that the Court would likely issue an order to show cause to consider sanctioning the Debtor if she continued to file motions seeking sanctions against the same creditors for conduct the Court has repeatedly ruled is not sanctionable. The Court noted that potential sanctions may include barring the Debtor from making additional filings without prior Court approval. Dkt. No. 180.

Less than a week after the February Decision was issued, the Debtor filed the Motions. The Sanctions Motion seeks relief from the Court to "sever and schedule separate evidentiary hearings for all matters scheduled and heard" at the February Hearing, Dkt. No. 190, despite the February Hearing having been held and completed. Attached to the Sanctions Motion is a document labeled "complaint for damages for willful violation of the automatic stay." The attached "complaint" makes allegations against a "defendant" who is not identified anywhere in the document. Dkt. No. 190-2. It requests the Court declare that certain lockouts that allegedly occurred between January 15-18, 2024, were in violation of the Stay. Further, it alleges that the "defendant" violated this Court's order of April 30, 2024, which, according to the Debtor, required the "defendant" to accept rent and sanctioned specific debt. Id. The Sanctions Motion then makes allegations against additional parties, again, without naming them. Id. As such, the Sanctions Motion appears to seek two forms of relief: the reopening the February Hearing; and reiterating the Debtor's request for sanctions that formed the basis for most of the February Motions. See id.

The Motion to Reopen also asks the Court to reopen and continue the February Hearing, alleging such relief is necessary so that the hearing may be completed, and Debtor can be afforded a meaningful opportunity to be heard on the issues raised in the motions. Dkt. No. 191. There are two attachments to the Motion to Reopen, the first appears to be a new motion for sanctions, against an unnamed party, seeking damages and an order vacating and modifying "the February lift stay order." Dkt. No. 191-2. The second attachment appears to be a letter-motion addressed to

3

the District Court requesting accommodations under the Americans with Disabilities Act (the "ADA"). Dkt. No. 191-3.

A hearing was held on both Motions on March 3, 2026 (the "Hearing"), at which the Debtor appeared. The Court allotted the Debtor ten minutes to make any argument related to the Motions, but the Debtor responded stating that she was not able to make argument as to the Motions, because she required accommodations under the ADA due to an asserted stress disorder. Hrg. at 11:31 – 11:43. Additionally, the Debtor argued that the Court had made incorrect findings of fact in its February Decision. Id. at 11:36-11:37.

## Discussion

Because both Motions, at least on their face, state they are seeking to reopen the February Hearing, the Court will discuss whether that relief is warranted, before discussing any other relief sought in the Sanctions Motion or the Motion to Reopen.

As noted, the February Hearing lasted more than forty-five minutes. Feb. 3 Hrg. 11:47 a.m. - 12:33 p.m. The Debtor argued her first motion from 11:48 – 11:56 a.m., at which time the Court stated, "that's your first motion, now, your second motion involves Grand Prix." Id. at 11:56 a.m. The Debtor argued her motion against Grand Prix from 11:56 a.m. - 12:10 p.m. At that time, the Court stated "[a]lright, I've heard enough about Grand Prix. Tell me about Days Inn." Id. at 12:10 p.m. The Debtor argued her motion against Days Inn from 12:10 - 12:26 p.m. In other words, the Debtor spent almost thirty minutes arguing her motions against Grand Prix and Days Inn. Id. 11:56 a.m. – 12:26 p.m. The Court stated that it had heard enough about Days Inn and asked the Debtor to move on to the Motion to Redeem. Id. at 12:26 p.m. The Court repeatedly asked the Debtor if she wanted to make any arguments regarding the Motion to Redeem, at which point counsel for one of the creditors made an improper comment and the Debtor left Courtroom,[1] and the Court

---

[1] The Debtor stated that she was not mentally well, at which point counsel for one of the Creditors, although the Court was not able to identify which, stated "that's obvious." 12:32 p.m.

4

stated it would issue its decision on all of the February Motions at a later date and took all of the February Motions under advisement. Id. at 12:33 p.m.

In the Motion to Reopen, the Debtor argues that she was denied due process because she was not afforded a meaningful opportunity to be heard on the issues in the February Motions due to her asserted emotional distress and the inflammatory remark made by one of the respondent's counsel. Dkt. No. 191.

Procedural due process ensures that litigants have the opportunity prosecute their cases involving constitutionally protected rights, such as property. In re McCutcheon, 629 B.R. 311, 321 (Bankr. M.D. Ga. 2021) (citing Anderson Nat. Bank v. Luckett, 321 U.S. 233 (1944)). Where a movant is given notice of a hearing and an opportunity to respond to any opposition at that hearing, procedural due process is satisfied. See id. As discussed above, the Debtor had a meaningful opportunity to argue her case. During the entire February Hearing, counsel for the respondents argued less than five combined minutes, meaning that the Debtor was given over forty minutes to make her arguments. Feb. 3 Hrg. at 11:47 a.m. - 12:33 p.m. Therefore, the Debtor was given a full and fair opportunity to argue her position and was not denied due process.

The Debtor next argues that the "hearing was not completed" because the Debtor left the courtroom "due to emotional incapacity." Dkt. No. 191. However, as noted above, arguments were completed regarding the Debtor's first three motions seeking sanctions. Therefore, the Debtor's argument fails as to those three motions. The only motion on which the Debtor did not present oral argument was the Motion to Redeem. But the Debtor was given multiple opportunities to present her argument, and she refused. Feb. 3 Hrg. at 11:47 a.m. – 12:32 p.m. Therefore, this argument also fails.

Tied to this argument, the Debtor alleges that she has sought therapy and seeks accommodations under the ADA. Id. The Debtor reiterated her request for accommodations during

5

this Hearing, stating she was not able to make any argument related to the Motions unless this request was accommodated. Hrg. at 11:33.² To the extent the Debtor argues that the Court's failure to offer her accommodations at the February Hearing creates grounds to reopen the matter, the Court notes that "the ADA does not apply to the federal judiciary." In re Crosby, 2025 WL 2179820, at *7 (Bankr. S.D. Ga. July 31, 2025) (citing Anders v. South Carolina, 2025 WL 1169191, at *4 (D.S.C. Mar. 31, 2025), report and recommendation adopted, 2025 WL 1167492 (D.S.C. Apr. 21, 2025); see also In re Borsotti, 2021 WL 1103624, at *5 (B.A.P. 9th Cir. Mar. 23, 2021).³ As such, this is not a basis to reopen the February Hearing, particularly in light of the fact that the Debtor did not request any accommodations prior to that hearing, and the Court did offer significant accommodations to the Debtor, including permitting her to argue the February Motions at length, well beyond the opportunities given to any of the respondents or the time typically allotted to parties in other cases that raise similar issues. See Feb. 3 Hrg. at 11:47-12:32. Therefore, this argument also fails.

Finally, the Debtor argues that "No written order or oral ruling was issued in Movant's presence resolving the pending motion." Dkt. No. 191. The Debtor offers no rule, statute, or explanation for this argument, and the Court is not aware of any requirement that a decision be rendered in the presence of a party, and in this case a copy of the Court's decision was placed on the docket and mailed to the Debtor. Therefore, this argument also fails.

Moreover, as described in the February Decision, the February Motions were denied because neither the motion papers, nor her arguments at the February Hearing, alleged any conduct

---

² The Court offered the Debtor the opportunity to withdraw her Motions and refile them when she was prepared to make her argument, but the Debtor did not accept this offer. Hrg. at 11:41.
³ The Court also notes that some accommodations requested by the Debtor in the Motion to Reopen are not available. For example, "clarifying legal burdens and duties" would be improper, as noted by the Borsotti court, "[a]lthough a court may give him some leeway as a pro se litigant, the court is always a neutral arbiter that should not help any party prosecute the bankruptcy case." 2021 WL 1103624, at *5

that would be sanctionable, would constitute a violation of the Stay, or a violation of the discharge injunction. Indeed, as explained in detail in the February Decision, the allegations by the Debtor against Grand Prix and Days Inn have been considered and rejected by the Court on multiple occasions and none of the conduct occurred while the Stay was in place. See Dkt. No. 180. Additionally, these claims were barred by collateral estoppel as well as law of the case. See Dkt. No. 180. If the Debtor disagreed with those decisions her remedy was to appeal, not to file additional motions complaining of the same facts and seeking the same relief. See Dkt. No. 180. Similarly, the February Decision explains that none of the allegations against the other creditors constituted a violation of the Stay. Id. Finally, the Motion to Redeem was denied due to substantive problems with the motion itself, including failure to offer any proof of the fair market value of the vehicle and the Debtor admitting she cannot make payment within a reasonable time. Id. These shortfalls could not have been remedied through a presentation at the February Hearing.

The Debtor was given a meaningful opportunity to be heard on all of the February Motions, and further, argument on all of the Motions save one had been completed prior to the Debtor leaving the courtroom. Moreover, the February Decision explains that the February Motions were denied due to substantive failures in the motions themselves, including the failure to give any basis for relief, and the Court having previously rejected the arguments in the motions on multiple prior occasions. The Debtor does not offer any other basis to reopen these matters, and therefore, both Motions, to the extent they seek this relief, are denied.

Moving on to the remaining relief sought in the Sanctions Motion, the Court initially notes that no single party is identified anywhere in the Sanctions Motion. Instead, all of the allegations are made against unnamed "defendants." Dkt. No. 190. Therefore, the Sanctions Motion will be denied on this basis alone.

However, despite failing to name any party, the underlying facts in the allegations are familiar to the Court, because the Debtor has made these allegations multiple times in past motions against Grand Prix and Days Inn. Id. For example, in the "complaint" attached to the Sanctions Motion, the Debtor makes references to "defendant" locking her out of her apartment, "defendant" being sanctioned by this Court on April 30, and "defendant willfully refused Plaintiff's rent payments . . . in violation of this Court's specific order." Id. at 190-2. Each of these allegations has been raised multiple times in prior motions by the Debtor. See, e.g., Dkt. Nos. 107, 117, 154. Each of the issues raised by these allegations has already been litigated and decided in prior motions, including the February Motions, which means, as explained in the February Decision, they are barred by collateral estoppel and law of the case. Dkt. No. 180 (citing Taylor v. Sturgell, 553 U.S. 880, 892 (2008)) (Collateral estoppel, or issue preclusion, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."); In re Broadstripe, LLC, 435 B.R. 245, 255 (Bankr. D. Del. 2010) (citing In re Resyn Corp., 945 F.2d 1279, 1281 (3d Cir. 1991); see also Field v. Mans, 157 F.3d 35, 40 (1st Cir. 1998)). Once an order is final, and has not been appealed, it becomes the law of the case. In re Hermanos Torres Perez, Inc., 491 B.R. 316, 318–19 (Bankr. D.P.R. 2010) (citing First Am. Title Ins. Co. v. Pifalo (In re Pifalo), 379 B.R. 1, 4 (1st Cir. BAP 2007)).

There are additional allegations in the "complaint," which the Court cannot definitively attribute to a specific party, because no party has been identified, and further because the statement of relief sought does not address any of the alleged harm resulting from these allegations. However, the Court does note that all of these allegations occurred after the case converted to Chapter 7 and concerned post-petition contracts and debts, which the Court has repeatedly informed the Debtor are not violations of the Stay. See, e.g., October 28, 2025, Hearing Ruling on Debtor's Motion for

8

Sanctions at 11:38- 11:39. (citing In re Chester, 2025 WL 2816599, at *7 (Bankr. D.N.J. Oct. 2, 2025) (quoting Matter of M. Frenville Co., Inc., 744 F.2d 332, 335 (3d Cir. 1984), overruled on other grounds by In re Grossman's Inc., 607 F.3d 114 (3d Cir. 2010)) (While the automatic stay is generally broad, "[p]roceedings or claims arising post-petition are not subject to the automatic stay."). In short, all of the allegations in the Motion for Sanctions are barred by collateral estoppel and law of the case, and even if the Court considered these allegations on their face, they fail to allege conduct which would warrant sanctions for violating the Stay. For all these additional reasons, the Motion for Sanctions is denied.

Finally, the Court turns to its Order to Show Cause issued on February 17, 2026. In the February Decision, the Court noted that the Debtor had filed six separate motions seeking sanctions against Grand Prix, and two separate motions seeking sanctions against Days Inn. Each of those motions made similar or identical allegations, and the Court repeatedly denied these motions for a multitude of reasons, including the reasons discussed above and in my previous decisions. Given how many times the Court has ruled on the issues, the February Decision put the Debtor on notice that if she continued to file such motions, this Court would likely issue an order to show cause why she should not be sanctioned. Despite this, less than a week later, the Debtor filed the Motions discussed in this opinion, which assert virtually identical allegations against Grand Prix and seeking sanctions for that conduct. The Court then issued an Order to Show Cause why the Debtor should not be sanctioned. The Debtor did not file a response to the Order to Show Cause. At the Hearing, the Debtor disputed having filed motions against Grand Prix and Days Inn for the same conduct on a repeated basis, but made no further argument related to the Order to Show Cause. Hrg. at 11:36-11:37. The Debtor's refusal to accept the rulings of this Court, her insistence on repeatedly filing baseless motions, costing the respondents time and money, as well as depleting

judicial resources, and her failure to show good cause why the Court should not sanction her leads this Court to determine that sanctions are appropriate.

The Court will exercise its inherent authority to "protect the courts from [a party's] oppressive and frivolous litigation [practices]." Perry v. Gold & Laine, P.C., 371 F. Supp. 2d 622, 629 (D.N.J. 2005) (citing Chambers v. NASCO, Inc., 501 U.S. 32 (1991)). See also 11 U.S.C. § 105(a). The Court will not allow the Debtor to continue her vexatious litigation practices. Her bankruptcy case is fully resolved, and has been for months, her discharge having been entered and the Trustee having issued his report of no distribution. Therefore, the Court will sanction the Debtor as follows. The Debtor will be precluded from filing any further motions related to the subject matter of the February Decision, including any allegations of violations of the Stay or the discharge injunction by any of the parties named in the February Motions, without first obtaining permission from the Court to do so, unless the Debtor is represented by counsel.

## Conclusion

Because the Debtor was given over forty minutes to make her arguments regarding the February Motions, and because argument had concluded as to all the motions which sought sanctions against respondents, and because the motions themselves were substantively flawed, such that they were barred by collateral estoppel, law of the case, and failed to make sufficient allegations to warrant the relief requested, and for all of the other reasons discussed above, the Court will deny the Motions. Moreover, the Court will sanction the Debtor for the reasons and in the fashion discussed above.

Dated: March 3, 2026

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE